Thank you. Move on to the next case, United States ex re v. Abbvie Inc. May it please the court, Your Honor, are you ready? We're ready, you can go. Okay, thank you. Your Honor, this case is really about power. And before I talk about the case law in this case, I just wanted to bring your attention to a new case filed in the U.S. District Court in the Southern District of Texas. It's a RICO case. The case was just decided last week, Harris County, Texas v. Eli Lilly. It is against two of the defendants in this case, three of the defendants, sorry. And it alleges exactly the price-fixing scheme that the relator alleges, including two of the drugs in this case. And the relator alleged this four years before the case in Texas was brought. So I would just like to say that the Department of Justice's conclusion that the relator didn't have any color book didn't stand up, and a hearing should have taken place in this case. The DOJ itself also brought a case. Let me ask you this. Traditionally, it's the province of a prosecutor, a federal prosecutor, to make decisions about what cases to go forward and what cases not to go forward on. And in many of them, particularly the ones with some complexity, there are a variety of factors to be considered. Why is it the business of Article III courts to second-guess that judgment? Exactly, Your Honor. You have put your finger on exactly the issue with this case. The Department of Justice depends on the Swift case, and the Swift case makes a fatal error. It confuses bringing a case with stopping an ongoing case. They are two completely different things. We can all agree that the government has discretion not to bring a case if it doesn't want to. But as far as terminating an ongoing case, those cases typically require additional judicial scrutiny, like Rule 48 in the criminal context. It's by leave of court. Like Rule 41, it's with the court's permission. In all these cases, the government has to spend at least some time trying to understand what the case is about and what the stakes might be in going forward or not going forward. So it seems to me that the distinction you draw between an ongoing case and one that's not is a little problematic. I feel that, well, first of all, I have two responses to that. One, the purpose of the QETAM provision that was written in 1986 is to allow relators to go ahead with a case when the government would not or could not intervene. So that's one thing. The second thing is that this case is more like the case of the Michael Flynn case, where the government is seeking to stop a case that's ongoing. It is not permitted to do that without some judicial scrutiny, and that's in Rule 48, Rule 41, and also in the False Claims Act. What is the level of judicial scrutiny that should apply here? One of the biggest problems with the False Claims Act is that it requires a hearing on the motion and then does not have a substantive standard. So Senator Grassley argues, and this is typically what we is a hearing, and then you apply legislative history to it. And so under the plain meaning rule in Senator Grassley's letter... Well, let's assume there is a role for the district court, that there is some scrutiny. What is the level of scrutiny and, you know, why was the district court wrong here? The district court essentially took a look at it and said, yeah, there is some reasoning. Why isn't that enough? Okay, so the statute requires a hearing on the motion, and the district court here really just allowed a motion. There was no hearing on the motion, it was just a motion. There was an exchange of papers. The district judge considered them. What were you planning to do at a... First of all, is there a requirement that there be an actual physical hearing? And if there were, what were you planning to do there? Well, there is neither a requirement nor a prohibition evidentiary hearing. That is up to the court to decide. But in this case, there was an unrebutted affidavit that there were later issues, and the court could have asked questions and assessed the credibility. What sort of credibility issues are you talking about? Well, the government gave three reasons for moving to dismiss, and one of them was resource burdens. Now, resource burdens is always true. And so it's your position that the district court judge should have inquired into the veracity of those representations? Decided whether the government was or was not credible in citing resource burden as a reason not to go forward? Well, here's why. Because in this particular case, the government's case until 10 months after it had refused to intervene, and at that point, we were three months into litigation, and all of the defendants had filed joint motions to dismiss. Now, if the government really had resource burdens, it could have sat back and waited until the 100 attorneys on the defendant's side represented themselves against me, the sole attorney of the relator. And if they did not crush me then, then the government could have moved to dismiss. But instead, it moved in right before all of these motions were going to be heard. And so it added to its own burden by intervening. So to me, it raises a question of how bad was their resource problem when they were adding to their own burden and not decreasing it, which they could have just waited and done. Do you anticipate a trial about all of this? Um, yes, I think there's $115 billion fraud. About the government's, about the validity of the government's reasoning for dismissal? I was thinking that it would be assessed during the hearing that the judge could hear arguments during some sort of hearing because it says a hearing on the motion. And basically, you could see that there was no requirement for the judge, for the district judge to have an in-person hearing, don't you? There, when it says hearing, it means that the judge assesses the evidence, weighs the credibility pro and con, and makes a decision. And so the district judges, as you know, get voluminous numbers of motions, and many they decide on the papers. You're aware of that, right? Absolutely, yes. That satisfies, in those cases, the requirements for a hearing before the cases, for example, dismissed, doesn't it?  Which is different from a hearing on the motion. Is it your position that the judge is required to have an in-person, in-court hearing? It is not required, except, I think, in this case, it should have happened because of several things, because of similar cases being brought on the same exact claims against the same Even assuming there are valid claims, doesn't the government still have the discretion to say, we don't want this case to go forward because it creates a burden? Whether we're a party or not, we're going to have to be involved, and we don't want to be involved. Yes, except that, I think, the timing of their motion creates an issue of how bad was their burden? I think that it's not really credible. All right, we'll hear from the government first, I guess. Good morning, your honors. May it please the court, Charles Jacob for the United States. Although the False Claims Act allows a relator to pursue civil fraud claims for harms to the government, it also gives the government broad control over those cases. After all, these are the government's own claims, and as this court held in the Flaherty case, relators do not have any personal interest in QITAM actions. The statutory text most relevant here is section C2A, which provides that the government may dismiss such a False Claims Act action, notwithstanding the objections of the person initiating it. The only statutory limitations on that authority is that the relator must be provided with notice of the motion. There's no dispute that happened here. The court must, quote, provide the person with an opportunity for a hearing on the motion. And where does that—once the government elects not to—elects dismissal, where does that leave the relator? Well, the relator has an opportunity to oppose the government's motion. They have an opportunity to be heard, and that's exactly what happened in this case, as the relator submitted written submissions in opposition to the government's motion. But after that, if that's not successful, the relator goes home. That's right. I mean, to emphasize, these are the government's claims. The relator—in the Flaherty case, this court instructed that, you know, this case is not one that the relator has a personal interest. So the relator is acting as a partial assignee, in part, as the United States, but this is the government's exercise of its prosecutorial discretion in determining which claims and which claims not to bring on its own behalf for purported damages caused—harms caused to the government. The statute does refer to a motion. It does refer to the opportunity for a hearing. That language seems to suggest that there is a role for the district court, or is it your position that it's—that the government has the absolute say and there really is no role for the district court? So our view is that Swift is correct, that the government has an unfettered right to dismiss, but there is a variety of ways that the hearing requirement is also given meaning. First, as the court in Swift held, it provides the relator with a formal opportunity to convince the government to end its case. Second, it also provides a public forum in which the government must make its declination decision. The imposition of such standards, even when they don't include substantive standards, public— But what is the role of the district judge? Is the district judge just a rubber stamp? No, it also gives the relator an opportunity for the—to raise allegations such as fraud on the court or some kind of extraordinary circumstance that the D.C. denial of the motion. Putting aside fraud, give us an example of a situation where you think a district court could reject the government's election to dismiss. So the government has not disputed that its dismissal authority is subject to constitutional constraints. Give me a couple examples. Well, for example, in the Armstrong case itself, the Supreme Court considered whether a claim of invidious discrimination could challenge prosecutorial discretion. So to be sure, that would have to be a substantial showing. But the example in Armstrong, for example, would be an example here where the relator would have to put forward colorable claims that—substantial evidence that the government should be presumed to not be exercising good faith in the ordinary course, which is the government in these decisions. Suppose the government, just hypothetically, the government and the relator litigated a case shoulder to shoulder for eight or ten years, big complicated case. There was a change in administrations. Some high government officials said, I don't want—I don't want this administration using resources chasing those particular plaintiffs. I'm going to see that it gets dismissed. Would a district court judge have any role, a supervisory role in that context? The district judge's role in that context would be to examine whether the relator has made a showing of a violation of the Constitution, a substantial showing. It wasn't a constitutional violation. It was a garden-variety political decision. So, no, in our view, the district court would not have a role in that. But to be clear, we want to emphasize here that none of the tests here are outcome determinative in this appeal. You know, the government has easily satisfied all of the standards that have been imposed by other courts of appeal. I understand where you're going with this, but we've got—we're wrestling with the standard to be applied, and that's what I'm seeking your assistance on. Of course. And I think one thing that's helpful in analyzing the standard is to look at the very next provision, which is Section C2b. And that is where the court examines whether to approve a settlement entered by the government. Now, before we even get to the settlement, in my case, it's hypothetical. It is clear that a political decision was made that we don't want these defendants chased anymore. They're major contributors. They're personal friends. I don't want this to happen. Does the district—does a district judge have any role in such a circumstance? The district judge's role in that circumstance would be to analyze whether the government violated any of the constitutional constraints in its exercise of its authority. And even if it was just a naked political decision, absent one with constitutional dimensions, it's your position that the district judge still has to be a rubber stamp? Well, not to be a rubber stamp, but to analyze whether the government has violated any, for example, prosecution impositions or any equal protection impositions, in that instance. What do you mean prosecution impositions? Selective prosecution impositions imposed by the Constitution, which prohibit— All right, you know, that's an extremely, extremely narrow subset, but it's the government's position that absent some conduct falling within this narrow subset, the district court's a rubber stamp. I wouldn't use the term rubber stamp, but I agree the government has unfettered discretion. But to be clear, if we look, I just want to point the court to the very next standard, C2B. I know my time is almost up, but the court there makes clear, the False Claims Act makes clear that there is a substantive standard for a court to review. And one, it's a familiar mode of statutory interpretation to draw a negative inference from the lack of such standard in the immediate adjacent provision, C2A. And I thank the court for its time. Thank you. Mr. Marin? Yes, good morning, Your Honor. While we agree with the United States here on the substance, we believe there's a jurisdiction. In the Supreme Court's case of Eisenstein, the Supreme Court unanimously held and set forth a rule that is clear and predictable. And that is that for purposes of Rule 4, the United States is a party to a False Claims Act case only if it has intervened in accordance with the procedures in the Act and appointed to 3, B2, B4, and C3. You know, why aren't you just, you know, going on a simple form? I don't see how the government can file a motion to dismiss unless it actually has intervened. Its problem is it didn't put the word end motion to intervene on its motion to dismiss. But it's acting in the case as a party when it files a motion to dismiss. That's an intervention as far as I can see. Why is it? Okay, so, Your Honor, it is not an intervention in accordance with the False Claims Act. And five other circuits have considered that question and rejected that position, Your Honor. The D.C. Circuit in Swift, the Third Circuit in Chang, the Ninth, Tenth, and Eleventh Circuits have all held that the United States is not required to intervene in order to file a motion to dismiss. And the statute does not contain any such requirement. And there's a number of reasons. First of all, textually, the C2 contains no such limitation, unlike other provisions adjacent to it, which do. And secondly, even the government doesn't agree with your position. Well, actually, Your Honor, they weren't asked. I do believe they agree that they have not intervened here. What the government is arguing, they agree that there is subject matter jurisdiction and that the appeal was timely filed. Well, Your Honor, this is the government is relitigating the same position that they argued in Eisenstein. And the government has an interest here. They want to get 60 days. Also, it just doesn't it doesn't make any sense that you can come in, make a motion to dismiss the action and then not be deemed a party. Well, so the Eisenstein addressed in footnote to that make any sense to you. It does in the peculiar situation of the False Claims Act, where five circuits have held that they don't have to intervene. And in the footnote to advise the Supreme Court specifically addressed one of the two carve outs that the United States asked for, which was C2A. The other one is a situation very analogous to this, which is where the parties to the case decide to dismiss it. And the United States comes in and says, we object. And the court dismisses the case anyway in the government appeals. And Supreme Court in footnote to said even there, the United States is not a party for purposes of rule four. And your honor, if you were to hold that by by filing a motion to dismiss, they effectively have intervened. It will create very perverse results. I respectfully submit under the False Claims Act in a number of ways. First of all, the government's whole motive for seeking to dismiss here was to avoid the burdens of third party discovery under the position the relators arguing for in the price the United States must pay in order even just to file that motion is to accept the burdens of first party discovery by intervening. And secondly, your honor, in a situation which we hope is rare, but it could happen where a court denies the motion to dismiss. What you end up happening is a situation that under C1, the United States, by intervening and filing its motion would have been. Mr. Jacob is quite confident to take care of the government's interest in this and the government's position is polluted. There was there was jurisdiction. I understand that. But the court has to satisfy itself that there's subject matter jurisdiction. If your honor looks at the Eisenstein briefs by the Supreme Court of the Solicitor General and argument, the position they're taking is the very same argument they made to the Supreme Court where they said, do not hold that intervention is always necessary. You're out of time. We have your thank you. Thank you. Well, we'll hear the rebuttal. Um. Is that me? Yes, that's you. OK, great. The most important thing is Judge Parker's point that he made before. The Swift case is unreliable authority. It bases its conclusions on three false premises, the worst of which is it uses Heckler to say something that Heckler does not say. Heckler is a case about initiating an action under the Administrative Procedure Act. This is a case about terminating an action. They are completely different things. And all that unfettered discretion language, that's from Heckler. That's from initiating an action. And these are very different circumstances. The other thing is Rule 41A does not apply in this case because the respondents had already responded. They had filed motions to dismiss. The Swift court also did not read the statute in its entirety. It left out the hearing requirement in its analysis that there's no judicial review, which is crazy to read this part of a statute and not the whole thing. So I would caution the court carefully to look at page 252 of Swift before you even think about relying on it. And that's where the government's unfettered discretion arguments come from. This is a case with a gigantic fraud allegation, $115 billion worth of damages. I think it was worth letting the relator at least try to handle those motions to dismiss by the defendants. And also, if you give the government unfettered discretion to dismiss, it's like giving it a ring of power. It can get rid of whistleblowers who are inconvenient, who say something that's politically incorrect, who offend powerful parties. Swift does not support that. And I don't think the government should either in this case. Thank you. Thank you all. The court will reserve decision.